UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| STEVEN MARK GREEN, | ) | CASE NO. C13-0749-JCC-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | APPEAL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Steven Mark Green proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1959.[1] He completed the seventh grade of school and

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT & RECOMMENDATION
PAGE -1

previously worked as a food service manager and cook. (AR 44-46.)

Plaintiff filed applications for DIB and SSI, alleging disability since June 24, 2009. (AR 154-59.) His application was denied initially and on reconsideration, and he timely requested a hearing.

ALJ M.J. Adams held a hearing on August 8, 2011, taking testimony from plaintiff, his mother, and a vocational expert. (AR 39-81.) On October 14, 2011, the ALJ rendered a decision finding plaintiff not disabled. (AR 22-33.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on February 27, 2013 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 24, 2009. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's depression affected by alcoholism and polysubstance dependence/abuse. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -2

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:   he can understand, remember, and carry out simple one- to two-step instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work; he has average or moderate ability to perform sustained work activities (maintain concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (eight hours a day, five days a week, or equivalent work schedule) within customary tolerances of rules regarding sick leave and absences; he can make judgments on simple work-related decisions, responding appropriately to supervisors and coworkers, and dealing with changes all within a stable work environment; he cannot deal with the public as in a sales/cashier position or where the general public is frequently encountered as an essential element of the work process such as telemarketing, but is capable of incidental contact with the public, so long as the public is not part of the work process.  With that RFC, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  The ALJ, with consideration of the Medical-Vocational Guidelines and vocational expert testimony, found plaintiff had the capacity to perform other jobs existing in significant numbers in the national economy, such as work as a dishwasher, hotel/motel

housekeeper, and hand packager. The ALJ, therefore, concluded plaintiff had not been under a disability from June 24, 2009 through the date of the decision.

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred at step five, erroneously evaluated the opinions of a physician, and failed to properly consider his substance use. He requests remand for further proceedings. The Commissioner maintains the ALJ's decision has the support of substantial evidence and should be affirmed.

### Step Five

Plaintiff argues error in the ALJ's failure to obtain a "reasonable explanation" for departures in the vocational expert's (VE) testimony from the Dictionary of Occupational Titles (DOT). The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). Pursuant to Social Security Ruling (SSR) 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

As stated by the Ninth Circuit Court of Appeals: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work). *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.") "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Social Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (internal citations omitted).

Plaintiff avers that two of the three jobs identified at step five – dishwasher and hand packager – require a greater level of ability than that accounted for in the RFC, which limited plaintiff to understanding, remembering, and carrying out simple one- to two-step instructions required of SVP 1 and $2^2$ or unskilled work. This argument relies on the fact that the dishwasher and hand packager positions require the ability to perform "reasoning level 2" work, meaning the ability to "carry out detailed but uninvolved written or oral instructions" and involving "a few concrete variables[,]" as opposed to "reasoning level 1" work, meaning the ability to "carry out simple one- or two-step instructions" and involving "occasional or no

---

2 "'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1231 n.4 (9th Cir. 2009) (quoting DOT, App. C).

REPORT & RECOMMENDATION
PAGE -5

variables[.]" *See* DOT App. C and DOT 318.687-010 (dishwasher) and 920.587-018 (hand packager) (both defined as reasoning level 2 work).  Plaintiff argues that only reasoning level 1 work is clearly consistent with the RFC assessment.  *See Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1208-11 (W.D. Wash. 2012) ("[T]he ALJ's RFC assessment language is analogous to reasoning level 1 only.  The ALJ specifically found that Plaintiff could understand "simple 1 to 2 step instructions" and "perform simple tasks."; describing relevant case law), *adopted by* 2012 U.S. Dist. LEXIS 145498 (W.D. Wash. Oct. 9, 2012).  He notes that the ALJ failed to obtain a reasonable explanation and persuasive evidence for the VE's departure from the DOT in identifying reasoning level 2 jobs at step five.

Plaintiff also avers error in relation to the remaining job identified at step five – hotel/motel housekeeper.  He contrasts the RFC limitation to only "incidental contact with the public, so long as the public is not part of the work process[,]" with the DOT description of Cleaner, Housekeeping work as requiring "render[ing] personal assistance to patrons[.]"  DOT 323.687-014.  Plaintiff argues the ALJ failed to obtain a reasonable explanation and persuasive evidence for this departure from the DOT.  *See Norris v. Colvin*, No. EDCV 12-1687, 2013 U.S. Dist. LEXIS 97838 at*8-9 (C.D. Cal. July 11, 2013) ("The job of cleaner/housekeeper (DOT No. 323.687-014) entails a duty to render personal assistance to patrons. The Court finds that this requirement conflicts with plaintiff's limitation to no interaction with the public.")

Plaintiff maintains harmful error given that, accepting his arguments, there is an absence of substantial evidence supporting the conclusion plaintiff could perform occupations existing in substantial numbers in the national economy at step five.  The Commissioner, while not conceding the reasoning levels argument, argues any error with respect to the dishwasher

REPORT & RECOMMENDATION
PAGE -6

and hand packager positions is harmless given the absence of error in relation to the hotel/motel housekeeper position. The undersigned, as discussed below, agrees with the Commissioner.

The ALJ found that, while plaintiff "cannot deal with the public as in a sales/cashier position or where the general public is frequently encountered as an essential element of the work process such as telemarketing[,]" he was "capable of incidental contact with the public, so long as the public is not part of the work process." (AR 26.) Plaintiff ignores the fact that the ALJ specifically distinguished work involving public contact as an "essential element" of the work process. The DOT, while describing the housekeeping work as entailing performance of "any combination" of a number of duties, including "render[ing] personal assistance to patrons[,]" does not specify whether or not that duty serves as an essential element of the work. DOT 323.687-014.

Plaintiff further ignores the fact that the ALJ did not find him incapable of public contact. He, instead, found plaintiff incapable of performing work involving "frequent" public conduct, but capable of "incidental" public conduct. (AR 26.) While some courts have found an unexplained discrepancy with the DOT to exist in cases involving claimants found limited to *no* contact with the public, *see*, *e.g.*, *Norris*, 2013 U.S. Dist. LEXIS 97838 at*8-9, vocational experts routinely identify claimants with lesser restrictions, such as limited, occasional, or superficial public contact, to be capable of performing the work of a housekeeper/cleaner. *See*, *e.g.*, *Barnett v. Colin*, No. CV-12-330, 2013 U.S. Dist. LEXIS 145854 at *8-11, 16-17 (E.D. Wash. Oct. 8, 2013); *Nunez v. Astrue*, No. CV 11-10219, 2012 U.S. Dist. LEXIS 176201 at *13 (C.D. Cal. Dec. 12, 2012); *Swan v. Astrue*, No. CV-10-00444, 2012 U.S. Dist. LEXIS 133272 at *5 (E.D. Wash. Sept. 18, 2012); *Brewitt v. Astrue*, No. C09-5147, 2009 U.S. Dist. LEXIS

102506 at \*27 (W.D. Wash. Oct. 10, 2009), *adopted by* 2009 U.S. Dist. LEXIS 102501 (W.D. Wash. Nov. 3, 2009), *Taylor v. Astrue*, 661 F. Supp. 2d 1184, 1188 (E.D. Wash. 2009). *See also Gonzalez v. Colvin*, No. CV 12-10261, 2013 U.S. Dist. LEXIS 115116 at \*13 (C.D. Cal. Aug. 14, 2013) (VE testified claimant limited to "no public contact" could perform work as housekeeper).[3]

Given the above, the Court is not persuaded plaintiff establishes an actual conflict with the DOT which would have required any reasonable explanation or persuasive evidence to support the step five conclusion. Instead, it can be said that the ALJ reasonably relied on the VE's statement that his testimony was consistent with the DOT. (*See* AR 75.)

Further, even assuming error in relation to the other jobs identified at step five, any error can be deemed harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless where it is "'inconsequential to the ultimate nondisability determination.'") (cited sources omitted); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless; the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)). That is, as discussed

---

[3] Other decisions reflect explanations from a VE as to public contact. *See*, *e.g.*, *Harris v. Astrue*, No. 3:10-cv-06239, 2012 U.S. Dist. LEXIS 89704 at \*8 (D. Or. Jun. 4, 2012) (VE testified "because homeowners are not usually at home and hotel occupants are not present during housekeeping services, public contact would be infrequent and limited."), *adopted by* 2012 U.S. Dist. LEXIS 89675 (D. Or. Jun. 27, 2012); *Gregorich v. Astrue*, No. C09-1186, 2008 U.S. Dist. LEXIS 116381 at \*4-5 (W.D. Wash. Jun. 18, 2008) ("vocational expert testified that there were 'a lot' of cleaning and housekeeping jobs that would have 'either no public contact or only superficial' contact.")

below, any error in relation to the dishwasher and hand packager positions can be deemed harmless given the identification of a significant number of motel/hotel housekeeper jobs.

The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012). It has, however, found "a comparison to other cases . . . instructive." (*Id.*) The Ninth Circuit has further made clear that "[t]he statute in question indicates that the 'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)." *Id.* (emphasis in original) (citing 42 U.S.C. §§ 423(d)(2)(A)). As such, upon finding "*either* of the two numbers 'significant,'" the Court "must uphold the ALJ's decision." *Id.*

In this case, the VE identified and the ALJ relied upon the identification of 4,205 hotel/motel housekeeper jobs in Washington State and 243,915 such jobs in the national economy. Considering those numbers, the ALJ's step five decision has the support of substantial evidence. *See*, *e.g.*, *Gray v. Comm'r of the SSA,* No. 09-35212, 2010 U.S. App. LEXIS 2609 at *63 (9th Cir. Feb. 8, 2010) (even excluding two of three jobs, 980 jobs in Oregon and 59,000 of jobs in the national economy constituted a significant number ); *Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (considering only one of two jobs identified, between 1,000 and 1,500 jobs in the local area constituted a significant number); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (over 2,300 jobs in the San Diego County area and 64,000 nationwide constituted a significant number); *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (even if certain jobs excluded, 1,266 jobs in the Los Angeles/Orange County area constituted a significant number); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1987) (amended) (3,750 to 4,250 jobs regionally significant); *Albidrez*

*v. Astrue*, 504 F. Supp. 2d 814, 824 (C.D. Cal. 2007) (1,445 jobs regionally and 17,382 jobs nationally significant); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 982 & n. 1 (C.D. Cal. 2005) (1,700 jobs locally and 38,000 jobs nationally significant). *Cf. Beltran*, 676 F.3d at 1206-07 (step five decision not supported by substantial evidence with evidence of 135 jobs regionally and 1,680 jobs nationally, scattered across several regions). For this reason, and for the reasons set forth above, plaintiff fails to demonstrate reversible error at step five.

<u>Physician's Opinions</u>

Plaintiff avers the ALJ's erroneous evaluation of the opinions of non-examining State agency psychologist Dr. John F. Robinson. He maintains the ALJ failed to give legally sufficient reasons for implicitly rejecting several of Dr. Robinson's opinions, including that plaintiff could perform "one task at a time[,]" and could "manage simple superficial get-along with a familiar and small group of coworkers but is unlikely to sustain direction interaction with the public." (AR 303.)

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. However, the ALJ need not provide reasons for rejecting a physician's opinions where the ALJ incorporated the opinions into the RFC. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir 2010). The ALJ may incorporate a physician's opinions by adopting RFC limitations "entirely consistent" with limitations assessed by a physician. *Id*. Also, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Indeed, the "final responsibility" for decisions such as the assessment of an individual's RFC is reserved to the Commissioner. SSR 96-5P.

When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

The ALJ in this case gave great weight to the opinions of Dr. Robinson as based on the longitudinal record and as consistent with a vocational analysis. (AR 30.) As the Commissioner argues and as set forth below, the RFC adequately accounted for and is entirely consistent with the opinions of Dr. Robinson.

Dr. Robinson found plaintiff able to perform "[simple routine or repetitive tasks] and familiar tasks, that are at modest pace, one task at a time[,]" but that he "may have difficulty with sustained fast pace or multi-tasking" which "may preclude some, but not all, of his [past relevant work] in restaurants." (AR 303.) The ALJ found plaintiff capable of understanding, remembering, and carrying out simple one- to two-step instructions required of SVP 1 and 2 or unskilled work, with an average or moderate ability to perform sustained work activities (i.e. can maintain attention and concentration, persistence, and pace), and capable of making judgments on simple work-related decisions and dealing with changes all within a stable work environment. (AR 26.)

As the Commissioner observes, Dr. Robinson's report arguably reflects that plaintiff

could perform (1) simple repetitive/routine tasks and (2) familiar tasks at a modest pace, one task at a time, with the latter finding indicating an ability to perform more detailed tasks one task at a time, as reflected in Dr. Robinson's subsequent opinion that plaintiff could "sustain [simple repetitive/routine tasks] *and somewhat more detailed work that is modestly paced*." (AR 303 (emphasis added).)  Plaintiff offers a contrary interpretation of this evidence as requiring an explicit limitation in the RFC to only performing "one task at a time." (AR 303.) Yet, however interpreted, the Court concludes that, while clearly not identical, the RFC assessment adequately accounted for and is consistent with the opinions of Dr. Robinson.

Dr. Robinson also opined plaintiff could "manage simple superficial get-along with a familiar and small group of coworkers but is unlikely to sustain direct interaction with the public[]" (AR 303), while the ALJ found plaintiff able to respond "appropriately to supervisors and coworkers, and [deal] with changes all within a stable work environment[,]" unable to work in a position involving frequent encounters with the public, but capable of incidental public contact (AR 26).  Again, while the RFC is not identical to the opinions offered by Dr. Robinson, it can be said to adequately capture and reveal consistency with the opinions of this physician.

As the Commissioner observes, the ALJ's observation as to co-workers and supervisors is reasonably read as distinguishing this ability with plaintiff's limitations in dealing with the public.  (AR 303 ("[Claimant] can manage simple superficial get-along with familiar and small group of coworkers but is unlikely to sustain direct interaction with the public."); *see also* AR 302 (in the checkbox portion of the form, the ALJ found plaintiff moderately limited in

REPORT & RECOMMENDATION
PAGE -12

relation to coworkers and supervisors, but markedly limited in relation to the general public).)[4] Further, the ALJ adequately accounted for the opinion as to coworkers by finding plaintiff able to "respond appropriately" to coworkers and supervisors "within a stable work environment." (AR 26.)  While plaintiff offers a contrary interpretation of Dr. Robinson's opinions as requiring the inclusion of "superficial get-along with a familiar and small group of coworkers" in the RFC, the ALJ's interpretation of this opinion evidence can be deemed rational.

Finally, the ALJ directly accounted for Dr. Robinson's opinion that plaintiff was unlikely to sustain direct interaction with the public by concluding plaintiff was capable of only incidental contact with the public, so long as the public was not part of the work process.  For this reason and for the reasons set forth above, plaintiff fails to demonstrate error in the ALJ's consideration of the opinions of Dr. Robinson.

### Substance Use

A claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  Therefore, where relevant, an ALJ must conduct a drug abuse and alcoholism (DAA) analysis and determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol.  20 C.F.R. §§ 404.1535, 416.935.  That is, the ALJ must, first, identify disability under the five-step procedure and, second, conduct a DAA analysis to determine whether substance abuse was material to disability.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  "If the remaining limitations would still be

---

[4] The ALJ appropriately utilizes the narrative portion of the form completed by Dr. Robinson, not the checkbox portion of that form.  *See* Program Operations Manual System (POMS) DI 25020.010 at B.1.

REPORT & RECOMMENDATION
PAGE -13

disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).   Plaintiff bears the burden of proving DAA is not a contributing factor material to his disability.  *Id.*   To do so, plaintiff must establish that his disability continues to be severe even in periods of sobriety.  *Id.*

Plaintiff argues the ALJ violated the two-stage method for evaluating substance use by failing, in the first stage, to find he would be disabled taking his substance use into account. He avers the ALJ was not permitted to use the second-stage analysis to disregard limitations attendant to substances, but nonetheless rejected various medical opinions, in part, on grounds that those opinions took into account or may have taken into account plaintiff's substance use. *See Woolery v. Colvin*, No. C12-1980-JCC-MAT, 2013 U.S. Dist. LEXIS 94105 at *18-19 (W.D. Wash. Jun. 12, 2013) (finding ALJ erred in failing to first separate out impact of alcohol abuse where ALJ considered impairments with consideration of impact of substance abuse, according less weight to one physician's opinion given that abuse and rejecting another physician's opinion, in part, given plaintiff's failure to be fully candid regarding history), *adopted by* 2013 U.S. Dist. LEXIS 94115 (W.D. Wash. Jun. 28, 2013).   He points to the ALJ's failure to acknowledge Dr. Robinson's opinion he would be disabled taking his substance use into account, and that the ALJ rejected the opinions of Dr. Katerina Riabova, Dr. Olga Suslova, Dr. Owen Bargreen, and Dr. R. Renee Eisenhauer, at least in part, based on consideration of his substance use or reports as to that use.

The Commissioner concedes error in the ALJ's failure to first find plaintiff disabled due

to the effects of his alcoholism. He maintains, however, that this error was harmless because the ALJ appropriately relied on plaintiff's period of sobriety to assess his functioning when alcoholism was not a factor. The Court agrees with the Commissioner.

Plaintiff bears the burden of demonstrating an error is harmful. *See Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012), and *Molina*, 674 F.3d 1104, 1111 (both citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). To demonstrate harmful error, plaintiff must "show at least a 'substantial likelihood of prejudice.'" *Ludwig*, 681 F.3d at 1053 (quoting *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011)). As a general principle, an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*. Also, the harmless error analysis is properly applied to cases in which an ALJ fails to follow the two-stage DAA analysis as set forth in *Bustamante*. *Parra*, 481 F.3d at 747.

While failing to properly conduct a two-stage DAA analysis, the ALJ in this case made clear his conclusion he found plaintiff's DAA material to plaintiff's disability, contrasting the period of time in which plaintiff was severely abusing alcohol with the period in which he maintained abstention from alcohol. He concluded:

> [T]he record shows that with medication compliance and sobriety, the claimant has been mostly stable since July 2010. Prior to this time, the claimant was severely abusing alcohol. The claimant maintains that he is sober and taking his medication as prescribed, therefore, he should be functional within the above [RFC]. After all, the record reflects that he was applying for job placement and he stated that currently he is the most sober and mentally stable that he has ever been.

(AR 31.) (*See also* AR 29-30 (considering evidence associated with plaintiff's history of

REPORT & RECOMMENDATION
PAGE -15

alcohol abuse, stating his "downward spiral was associated with relationship problems and alcohol abuse[,]" taking note of his intoxication during his hospital admissions in 2008 and 2009, and stating that this and other evidence "suggests factors other than his impairments affect his ability to maintain fulltime employment."))

Plaintiff fails to demonstrate any harmful error in the ALJ's treatment of opinion evidence from Dr. Robinson.  While the ALJ did not spell out that Dr. Robinson found plaintiff would be disabled with the consideration of DAA (at least upon reaching the twelve-month durational requirement), but not disabled without consideration of DAA, he does acknowledge this distinction as made by Dr. Robinson and his analysis is entirely consistent with Dr. Robinson's opinions.  (AR 30 (noting Dr. Robinson opined plaintiff could "when sober and treatment compliant, keep a routine and get around as needed.") (citing AR 303).)

Nor does plaintiff explain how the ALJ's consideration of evidence from Drs. Riabova, Suslova, and/or Eisenhauer reflects a substantial likelihood of prejudice.  The ALJ, as stated above, made a clear distinction between plaintiff's condition before and after his alleged abstention from alcohol.  He identified two episodes of decompensation, both associated with intoxication and the latter of which occurred in August 2009, and contrasted evidence of plaintiff's mental health at the time when he continued to abuse alcohol and evidence after that time period, the latter of which reflected improvement.  (AR 24-29.)  As acknowledged in the ALJ's decision, Dr. Riabova's May 2009 evaluation occurred during a time in which plaintiff admitted a significant drinking problem and withdrawal symptoms, Dr. Suslova's August 2009 evaluation occurred at the time of his second period of alcohol-related decompensation, and Dr. Eisenhauer's July 2009 approval for Medicaid included her acknowledgment that she was

REPORT & RECOMMENDATION
PAGE -16

unaware of plaintiff's alcohol intake at that time. (AR 28-29, 261-68, 270, 328-31.) As considered in relation to the evidence from these physicians, the ALJ's failure to conduct a two-stage DAA analysis can be considered inconsequential to the ultimate nondisability determination.

Plaintiff bases his final argument of harmful error on the ALJ's consideration of evidence from Dr. Bargreen. The ALJ gave little weight to Dr. Bargreen's June 2011 evaluation, finding it "not consistent with treatment notes from this same time that reflect the claimant was doing fairly well, had a stable mood, and he denied having auditory hallucinations." (AR 29 (citing AR 387-91).) He further stated: "In addition, it appears at least partially based on the claimant's report that he had been clean and sober for "many years," which is not true according to the record and the claimant's own testimony." (*Id.*)

In his opening brief, plaintiff argues "this is a second-stage analysis." (Dkt. 17 at 18-19.) However, the mere fact that the ALJ did not first identify plaintiff as disabled with consideration of DAA does not, in and of itself, demonstrate harmful error. Plaintiff bears the burden of demonstrating a substantial likelihood of prejudice.

Plaintiff, in reply, asserts that the Commissioner "maintained that Green had been sober for a year preceding the ALJ's November 2011 decision." (Dkt. 19 at 10 (emphasis removed).) He argues that, given this admission, there was no rational basis to reject Dr. Bargreen's opinions as tainted by substance use. (*Id.*) However, this simplification of the Commissioner's argument likewise fails to demonstrate harmful error. As plaintiff is aware, the ALJ took note of inconsistency in plaintiff's reporting as to continued alcohol use, contrasting a June 2011 report from Dr. Kathleen Anderson reflecting plaintiff's report he

REPORT & RECOMMENDATION
PAGE -17

drank some twelve beers a month, with his testimony at the August 8, 2011 hearing as to his sobriety. (AR 29-30.)[5]  The ALJ also noted plaintiff's testimony it had been both "a little over a year ago[]" and "[n]ot quite two years[]" since he last drank alcohol. (AR 48.) The ALJ found that, "[r]egardless of the truth as to this issue," plaintiff "diminished his overall reliability through inconsistent reporting." (AR 30.) *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (lack of truthfulness about substance use has been deemed a clear and convincing reason to reject a claimant's testimony). He also ultimately concluded that plaintiff had been "mostly stable[]" since July 2010 with medication compliance and sobriety, as contrasted to the prior time period in which he "was severely abusing alcohol." (AR 31.)

It should further be noted that Dr. Bargreen did not appear to consider plaintiff's use of alcohol. Instead, he observed that plaintiff "has not used drugs for many years" based on his self-report of "a history of drug dependence including LSD, cannabis and cocaine[,]" last used "roughly five years ago[.]" (AR 387, 389.) While the ALJ previously noted a urine analysis positive for benzodiazepines and cannabinoids in July 2008 (AR 27), his consideration of this aspect of Dr. Bargreen's report appeared to also include plaintiff's use of alcohol given that he contrasted plaintiff's report to Dr. Bargreen with both the record and plaintiff's testimony, the latter of which addressed only plaintiff's alcohol use. (*See* AR 48.) However, the ALJ's observation as to a disconnect between plaintiff's report to Dr. Bargreen and other evidence in

---

5 Plaintiff did not identify error in relation to Dr. Anderson. The Court nonetheless observes that, while noting plaintiff denied the accuracy of Dr. Anderson's report as to his alcohol intake, the ALJ did not reference substance use in according the opinions of Dr. Anderson little weight. (AR 29.) He did reject the opinion, in part, based on the perception it was based mainly on self-reports some of which appeared to be inaccurate. (*Id*.) However, this observation would include plaintiff's report of "ongoing auditory hallucinations and paranoid delusional thought process, which he denied having in April 2011." (*Id*.)

REPORT & RECOMMENDATION
PAGE -18

the record regarding sobriety nonetheless remains accurate as a general matter.  Moreover, the fact that plaintiff failed to disclose his history of alcohol abuse serves to underscore the ALJ's reasoning, rather than demonstrating the absence of any rational basis for consideration of this information.  *Cf. Verduzco*, 188 F.3d at 1090.  *See also Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (citation to evidence offered not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position.")

In sum, while the ALJ should have followed the proper DAA analysis, plaintiff fails to set forth any basis for concluding that the failure to do was harmful.  Instead, considering the ALJ's reasoning, and looking to the record as a whole, the Court finds no basis for concluding that the error "alters the outcome of the case."  *Molina*, 674 F.3d at 1115.  *See also Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 18th day of November, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge